IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

HERBER SOLIZ, *et al.*,   )
        )
  Plaintiffs,   )
        )
v.   )   Case No. 1:24-cv-00974 (WBP)
        )
JAMES G. DAVIS CONSTRUCTION   )
CORPORATION, *et al.*,   )
        )
  Defendants.   )

**MEMORANDUM OPINION AND ORDER**

Before the Court is Third-Party Plaintiff Charles A. Klein & Sons, Inc.'s ("CAK") Motion for Default Judgment against Third-Party Defendants J. Valesquez Plumbing & Sheet Metal, LLC, doing business as J. Velasquez Mechanical & Plumbing ("Velasquez Plumbing"), Walter Valesquez, and Silvia I. Velasquez (collectively, "Velasquez Defendants"). ("Motion"; ECF No. 87.) For the reasons below, CAK's Motion for Default Judgment is GRANTED in part and DENIED in part.

I.

A.

On July 17, 2024, Plaintiffs filed an Amended Complaint to recover unpaid wages and overtime compensation from James G. Davis Construction Corporation ("Davis") and CAK under the Fair Labor Standards Act ("FLSA"), the Virginia Overtime Wage Act ("VOWA"), the Virginia Wage Payment Act ("VWPA"), and the Virginia Minimum Wage Act ("VMWA"). (ECF No. 23.)[1]

---

[1] Plaintiffs also alleged that Defendants violated Code of Virginia section 40.1-28.7:7(A).

Two weeks after the Amended Complaint was filed, Davis filed a crossclaim against CAK seeking contribution and indemnification. (ECF No. 30.) CAK moved to stay Davis's crossclaim and to compel arbitration. (ECF No. 40.) CAK and Davis then filed a consent motion asking the Court grant CAK's motion to stay and asking CAK to refrain from initiating arbitration until Plaintiffs' claims were resolved. (ECF No. 52.) On August 30, 2024, the Court entered an Order granting CAK's motion to stay. (ECF No. 55.)

On August 26, 2024, CAK filed a Third-Party Complaint against the Velasquez Defendants alleging violations of the FLSA, violations of Virginia wage laws, breach of contract, and indemnification. (ECF No. 44.) The Velasquez Defendants were served on August 29, 2024. (ECF Nos. 56, 57, 58.) Under Federal Rule of Civil Procedure 12(a), the Velasquez Defendants had to file their responsive pleadings by September 19, 2024, which they each failed to do. On October 4, 2024, CAK asked the Clerk to enter default against the Velasquez Defendants (ECF No. 61), which the Clerk entered on October 8, 2024 (ECF No. 66).

On October 22, 2024, pursuant to 28 U.S.C. section 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the Court entered an Order referring jurisdiction over this matter to the undersigned. (ECF No. 79.) On November 1, 2024, the Court approved a settlement of the underlying collective action among Plaintiffs, Davis, and CAK (ECF No. 82), and the Court dismissed Plaintiffs' claims against Davis and CAK but retained jurisdiction to enforce (i) the settlement agreement, (ii) the Clerk's entry of default against the Velasquez Defendants, and (iii) Davis's crossclaim against CAK. (ECF No. 85.)

On December 19, 2024, the Court ordered CAK to file a motion for default judgment against the Velasquez Defendants (ECF No. 86), and on January 16, 2025, CAK filed the instant Motion. (ECF No. 88.) On January 29, 2025, the Court directed CAK to file a supplemental brief

2

outlining the legal authority for some of its arguments, which CAK submitted on February 3, 2025. (ECF Nos. 94, 95.) The Court held a hearing on CAK's Motion for Default Judgment on February 7, 2024. CAK's counsel appeared, but no one appeared on behalf of the Velasquez Defendants.

B.

Plaintiffs' Amended Complaint (ECF No. 23), CAK's Third-Party Complaint (ECF No. 44), and the Memorandum in Support of Default Judgment (ECF No. 88) establish the facts below.

Davis was a general contractor for the Unity Homes at Ballston project located at 4201 Fairfax Drive, Arlington, Virginia, 22203 ("Ballston Project"). (ECF No. 23 at 1.) On May 2, 2022, Davis and CAK executed a subcontract ("Davis Agreement"), in which CAK agreed to complete all plumbing and mechanical work on the Ballston Project. (ECF No. 88 at 2.)

On August 6, 2022, CAK and Velasquez Plumbing entered into a subcontractor agreement under which Valasquez Plumbing agreed to perform certain heating, ventilation, and air conditioning ("HVAC") construction for the Ballston Project. ("Velasquez Subcontract"; *Id.* at 1-2; ECF No. 44-1.) Mr. Velasquez, as a member of Velasquez Plumbing, executed the Velasquez Subcontract on behalf of the company. (ECF No. 88 at 1-2.)

Paragraph 6 of the Velasquez Subcontract required Velasquez Plumbing, as part of its subcontractor responsibilities, to "provide services in accordance with the standards exercised by members of Subcontractor's profession currently practicing in the same locality under similar conditions and [to] incorporate those laws, codes and standards that are applicable at the time services are rendered." (ECF No. 44-1 at 1.) Paragraph 21 of the Velasquez Subcontract required Velasquez Plumbing to indemnify, defend, and hold harmless CAK from any lawsuit regarding the work performed. (*Id.* at 4.) Mr. Velasquez also signed an Affidavit and Final Release of

3

Liens ("Covenant") on behalf of Velasquez Plumbing, promising that workers employed by Velasquez Plumbing "have received payments due and that none of such . . . [workers] have any claim, demand, or lien against the [Ballston] Project." (ECF No. 44-2.)

Velasquez Plumbing employed Plaintiffs to perform the work required by the Valaquez Contract (ECF No. 88 at 2) and, according to CAK, Velasquez Plumbing had the authority to supervise, hire and fire, control the work schedules and conditions of employment, and determine Plaintiffs' wages. (ECF No. 88 at 2.) Mr. Velasquez and Mrs. Velasquez—as Velasquez Plumbing's member and managing officer, respectively—were also joint employers of Plaintiffs. (*Id.*) Plaintiffs alleged that they were not properly paid for their work on the Ballston Project. (ECF No. 23.)

## II.

Rule 55 of the Federal Rules of Civil Procedure allows entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Because the Velasquez Defendants have failed to respond or otherwise defend the action, the Clerk entered default against all of them. (ECF No. 66.)

Once in default, the facts alleged in a complaint are considered admitted against the defendants, and the appropriate inquiry is whether the facts alleged state a claim. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) and *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). Even so, the court does not automatically consider as admitted the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). Instead, Federal Rule of Civil Procedure 55(b)(2) allows the court to conduct a hearing to determine the

amount of damages, to establish the truth of any allegation by evidence, or to investigate any other matter when necessary to enter or carry out judgment.

A.

A court must establish both subject matter jurisdiction over a claim and personal jurisdiction over a party-in-default before a default judgment may be entered.

As for subject matter jurisdiction, district courts are vested with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well as "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies[.]" 28 U.S.C. § 1337(a). The FLSA specifically vests district courts with jurisdiction over any action to recover unpaid minimum or overtime wages. *See* 29 U.S.C. § 216(b). With some exceptions,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

As applied here, because one of CAK's claims—violations of the FLSA—arises from a law of the United States and an Act of Congress regulating commerce, the Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331 and 1337. Because CAK's Virginia and breach of contract claims arise from the same facts and are based on the same case or controversy as CAK's FLSA claim, this Court may exercise supplemental jurisdiction over them pursuant to 28 U.S.C. section 1367(a).

As for personal jurisdiction, Velasquez Plumbing is a limited liability company organized under Virginia law with its principal place of business in Manassas, Virginia. (ECF No. 44 at 2.) Because Velasquez Plumbing is "at home" in the Eastern District of Virginia, the Court has general personal jurisdiction over it. *See Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 936 (E.D. Va. 2017) (noting that general personal jurisdiction exists where defendant's affiliations with the state are so "continuous and systematic" that a defendant is essentially at home in the state).

The Court also has personal jurisdiction over Mr. and Mrs. Velasquez because Virginia law permits the exercise of personal jurisdiction over a party if the alleged cause of action arises from that party having transacted business in Virginia. *See* VA. CODE § 8.01-328.1(A)(1). But that does not end the inquiry because a court's exercise of personal jurisdiction over a party under state law also must comply with due process. *See Carroll v. FedFinancial Fed. Credit Union*, 324 F. Supp. 3d 658 (E.D. Va. 2018) ("Virginia's long arm statute extends the jurisdiction of its courts as far as federal due process permits."). Due process allows courts to exercise personal jurisdiction over non-residents if they have "certain minimum contacts" with the forum state, to avoid offending traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation and Placement*, 326 U.S. 310, 320 (1945). As alleged in the Third-Party Complaint, Mr. Velasquez and Mrs. Velasquez hired Plaintiffs to perform HVAC-related construction work in Arlington, Virginia and for Virginia customers. (ECF No. 44 at 3-4.) Mr. Velasquez executed the Velasquez Subcontract with CAK, on behalf of Velasquez Plumbing, to perform work in Virginia. (ECF No. 88 at 1-2.) These facts are more than adequate to support personal jurisdiction over Mr. Velasquez and Mrs. Velasquez under Code of Virginia section 8.01-328.1(A) and constitute sufficient minimum contacts to

comply with their rights to due process. *See Liberty Mut. Fire Ins. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 441 (E.D. Va. 2015) (finding that a defendant who had deliberately engaged in significant or long-term business activities in the forum state established minimum contacts).

Venue is also proper under 28 U.S.C. section 1391(b)(2) as many of the events or omissions giving rise to CAK's claims against the Velasquez Defendants arose within this District.

B.

Federal Rule of Civil Procedure 4(e)(2)(A) provides that an individual may be served by "delivering a copy of the summons and of the complaint to the individual personally." According to an affidavit filed with the Clerk, a process server personally served Mrs. Velasquez on August 29, 2024. (ECF No. 57.)

Federal Rule of Civil Procedure 4(e)(2)(B) allows for substituted service of process by leaving a copy of process at a defendant's dwelling or usual place of abode with someone of suitable age and discretion who resides there. *See* FED. R. CIV. P. 4(e)(2)(B). To serve Mr. Velasquez, the process server served Mrs. Velasquez at Mr. Velasquez's place of residence. (ECF No. 58.) The process server claims that Mrs. Velasquez is Mr. Velasquez's spouse and resides as his address. (*Id.*)

As to Velasquez Plumbing, Federal Rule of Civil Procedure 4(h)(1)(B) allows service to be made, among other ways, by "delivering a copy of process to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." According to the process server's affidavit filed with the Clerk, Velasquez Plumbing was served through its registered agent, Mrs. Velasquez. (ECF No. 56.)

For these reasons, the Velasquez Defendants were properly served.

C.

Under Federal Rule of Civil Procedure 12(a), the Velasquez Defendants had to file responsive pleadings within 21 days after they were served with the summons and Complaint. As they were all served on August 29, 2024, their responsive pleadings were due September 19, 2024. No responsive pleadings have been filed by any of the Velasquez Defendants, and the deadline has expired. Therefore, on October 4, 2024, CAK filed a request for entry of default as to the Velasquez Defendants, which the Clerk entered on October 8, 2024. (ECF Nos. 61, 66.)

Accordingly, the Clerk properly entered default as to all the Velasquez Defendants.

D.

CAK argues that the Velasquez Defendants are liable to it for four reasons. First, CAK argues that the Velasquez Defendants are liable to it because the Velasquez Defendants were liable to Plaintiffs under the FLSA. (ECF No. 88 at 6.) Second, CAK argues that Velasquez Plumbing is liable to it because Velasquez Plumbing had a contractual duty to indemnify and hold harmless CAK under the Velasquez Subcontract. (*Id.* at 6-7.) Third, CAK argues that Velasquez Plumbing and Mr. Velasquez breached the Velasquez Subcontract and Covenant. (*Id.* at 7-8.) Finally, CAK argues that Velasquez Plumbing must pay it under Virginia statutory law. (*Id.* at 8-9; ECF No. 95 at 2.)

1.

CAK first argues that the Velasquez Defendants are liable to it because the Velasquez Defendants were directly liable to Plaintiffs under the FLSA. (ECF No. 88 at 6.) To establish liability under the FLSA for nonpayment of wages, a plaintiff must show that (1) the defendant employed the plaintiff; (2) the plaintiff was engaged in commerce or in the production of goods for commerce; (3) the plaintiff was not compensated for all hours worked during each workweek

at a rate equal to or greater than the then-applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. section 213 applied to the plaintiff's position. 29 U.S.C. § 206. Even if CAK could establish the Velasquez Defendants' direct liability to Plaintiffs, CAK has not provided any authority for its argument that it can somehow recover FLSA damages for itself against a lower tier contractor who is alleged to have failed to properly pay its employees.

None of the FLSA elements apply to CAK, the plaintiff and higher tiered subcontractor in this third-party action. Velasquez Plumbing did not hire CAK; CAK hired Velazquez Plumbing. Velasquez Plumbing—not CAK—employed Plaintiffs to perform HVAC services under the Velasquez Subcontract, and Velasquez Plumbing employed Plaintiffs to "handle . . . or otherwise work on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). And it was Velasquez Plumbing—not CAK—that failed to pay Plaintiffs for certain hours they worked at a rate equal to or greater than the then-applicable minimum wage. (ECF No. 88 at 9.)

CAK has simply failed to provide any authority for its argument that the law allows a higher tiered subcontractor to assert a FLSA claim against a lower tiered contractor that failed to pay its employees. At best, CAK contends that a "joint employer theory" permits it to recover from the Velasquez Defendants. (ECF No. 95 at 1-2.) But "[t]he joint employment doctrine is premised on the theory that, when two or more entities jointly employer a worker, the worker's entire employment arrangement must be viewed as one employment for purposes of determining whether the [worker was an] employee[] or independent contractor[] under the FLSA." *See Hall v. DIRECTV*, 846 F.3d 757, 767 (4th Cir. 2017). CAK has provided no authority that stands for

the proposition that the joint employer doctrine allows a contractor to assert an FLSA action against its subcontractor for the subcontractor's failure to pay its own employees.

CAK also argues that, because Mr. Velasquez and Mrs. Velasquez may be directly liable to Plaintiffs under the FLSA, that CAK, too, should be allowed to recover damages it paid to Plaintiff's in an FLSA action under the Virginia common-law doctrine of equitable indemnification. (ECF No. 95.) Virginia law does recognize a right to equitable indemnification when a party without personal fault is legally liable for damages caused by the *negligence* of another. *Woodson v. City of Richmond, Va.*, 2 F. Supp. 3d 804, 810 (E.D. Va. 2014) (emphasis added). But the Supreme Court of Virginia has held that a "prerequisite to recovery based on equitable indemnification is the initial determination that the *negligence* of another person caused the damage." *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 528 (2003) (emphasis added). No such negligence claim has been asserted here, and no facts have otherwise been proved to support it. Thus, the equitable indemnification doctrine is unavailable to CAK.

For these reasons, CAK cannot recover from any of the Velasquez Defendants solely because CAK was liable to Plaintiffs for unpaid wages under the FLSA.

2.

Next, CAK argues that Velasquez Plumbing had a contractual duty to indemnify and hold harmless CAK under the Velasquez Subcontract. (ECF 88 at 6-7.) As a threshold matter, "a court exercising supplemental jurisdiction over state law claims applies the choice of law rules of the forum state." *What Hurts, LLC v. Volvo Penta of the Americas, LLC*, 710 F. Supp. 3d 502, 514 (E.D. Va. 2024). The Court has exercised supplemental jurisdiction over CAK's breach of contract and express indemnification by contract claims and must apply Virginia's choice of law rules. Virginia law permits parties in a contract to choose the state law that applies to their

10

contract. *See* VA. CODE § 59.1-501.9. CAK and Velasquez Plumbing agreed that the Velasquez Subcontract was to be governed and determined by Maryland law. (ECF No. 88 at 7; ECF No. 44-1 at 5.) Therefore, Maryland contract law applies.

It is well-settled under Maryland law that "a right to indemnification can arise by express agreement or by implication." *Cervantes v. Panel and Window Services*, No. CV TDC-22-337, 2024 WL 413597, at *5 (D. Md. Feb. 5, 2024), *rep. and recommendation adopted*, No. CV TDC-22-0337, 2024 WL 2874609 (D. Md. Feb. 22, 2024) (quoting *Hanscome v. Perry*, 75 Md. App. 605, 615 (1988)). Generally, releases—like indemnification provisions—are contracts and should be interpreted and applied according to the rules of applicable contract law. *See Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 495-96 (2005). A court must interpret the language of an indemnification provision "in accordance with its customary, ordinary, and accepted meaning." *Bd. of Trs. Cmty. Coll. of Balt. Cnty v. Patient First Corp*, 444 Md. 452, 466 (2015).

Paragraph 21 of the Velasquez Subcontract provides that "[Velasquez Plumbing] shall indemnify . . . and hold harmless [CAK] . . . from and against any and all claims . . . damages . . . and any . . . costs and expenses . . . which arise or are in any way connected with the work performed . . . under [the Velasquez Subcontract]. (ECF No. 44-1 at 4.) Mr. Valasquez signed the Velasquez Subcontract on behalf of Velasquez Plumbing. (*Id.* at 5.)

Because Paragraph 21 requires Velasquez Plumbing to indemnify and hold harmless CAK for any claims brought against CAK in connection with Velasquez Plumbing's work on the Ballston Project, and because CAK was required to pay damages to Velazquez Plumbing's employees—Plaintiffs here—because Velasquez Plumbing failed to pay them, CAK's damages arise from and are connected to the work Velazquez Plumbing performed under the Velazquez Subcontract. Thus, CAK has established that, under the Velasquez Subcontract, Velasquez

11

Plumbing must indemnify CAK for all damages, attorneys' fees, and costs CAK was required to pay Plaintiffs or Davis in this action.

3.

Third, CAK contends that Velasquez Plumbing and Mr. Velasquez breached the Velasquez Subcontract and the Covenant and thus are liable to CAK for the damages arising from those breaches. (ECF No. 88 at 7-8.) Under Maryland law, to establish breach of contract, CAK must show that (1) Velasquez Plumbing and Mr. Velasquez owed contractual obligations to CAK and that (2) they breached their obligations. *See RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 443 (Md. 2010) (holding that to show breach of contract, a party must show an obligation and a failure to meet that obligation).

Paragraph 6 of the Velasquez Subcontract required Velasquez Plumbing to provide its services in accordance with the law. (ECF No. 44 at 1.) Mr. Velasquez signed the Covenant on behalf of Velasquez Plumbing, promising that all workers employed by Velasquez Plumbing would receive payments due so that no worker would have a claim, demand, or lien against the Ballston Project. (ECF No. 44-2.)

CAK has established that Velasquez Plumbing has breached the Velasquez Subcontract. Velasquez Plumbing had a contractual obligation to provide its services in accordance with the law, and Velasquez Plumbing breached that obligation by failing to pay Plaintiffs proper wages, in violation of the FLSA. (ECF No. 88 at 8.)

Conversely, CAK has not established that Mr. Velasquez breached the Covenant. While Mr. Velasquez signed the Covenant, he did not sign it on his own behalf. (ECF No. 44-2.) Rather, Mr. Velasquez signed it as the authorized representative of Velasquez Plumbing. (*Id.*)

Therefore, personal liability does not attach for Velasquez Plumbing's breach of the Covenant.[2] Despite Mr. Velasquez not having a contractual obligation under the Covenant, Velasquez Plumbing did, and Velasquez Plumbing breached that contractual obligation by failing to pay Plaintiffs their wages.

Therefore, under Maryland law, CAK has established that Velasquez Plumbing is liable to CAK for breach of contract.

4.

Finally, CAK claims that Virginia law permits it to recover from Velasquez Plumbing because Code of Virginia section 11-4.6(C)(1) imposes joint and several liability against general contractors, subcontractors, and additional lower tier subcontractors who fail to pay the wages of the employees of the lower tier subcontractors. *See* VA. CODE § 11-4.6(C)(1). But like CAK's attempt to assert a FLSA claim against Velasquez Plumbing, this statute allows unpaid employees to assert upstream liability against higher tiered contractors but in no way creates a downstream contribution claim. If Virginia's General Assembly had intended as much, it would have said so. Regardless, CAK did not plead contribution in its Third-Party Complaint, so it has waived any contribution claim or recovery under such a theory or under this statute.

CAK has, however, asserted an indemnification claim against Velasquez Plumbing under Code of Virginia section 11-4.6(C)(3), which requires a subcontractor to indemnify a general contractor for any "wages, damages, interest, penalties, or attorney fees owed as a result of the subcontractor's failure to pay wages to the subcontractor's employees." *See* VA. CODE § 11-4.6(C)(3). Pursuant to this statute, CAK argues, Velasquez Plumbing must indemnify it for all

---

[2] In its supplemental brief, CAK contends that Mr. Velasquez's personal liability arises from tort law, as Mr. Velasquez provided a false sworn statement to CAK. (ECF No. 95 at 4-5.) But CAK did not include tort in its Third-Party Complaint and has waived such a claim.

13

wages, damages, interest, penalties, and attorneys' fees owed because of Velasquez Plumbing's failure to pay wages to Plaintiffs. (ECF No. 88 at 8.) Code of Virginia section 11-4.6(C)(3).

Statutory indemnification applies here as CAK subcontracted with Velasquez Plumbing to provide HVAC services, Velasquez Plumbing failed to pay wages and overtime to Plaintiffs, and CAK has paid damages to Plaintiffs. (ECF No. 88 at 8-9.) Therefore, under Code of Virginia section 11-4.6(C)(3), Velasquez Plumbing must indemnify CAK for the amount it paid Plaintiffs.

IV.

As to damages, CAK requests back wages, overtime, and fees paid to Plaintiffs; attorneys' fees for defense of Plaintiffs' claims and Davis' crossclaim; and attorneys' fees for pursuing its own claims against the Velasquez Defendants. (ECF No. 88 at 9-12.) CAK also seeks post judgment interest pursuant to 28 U.S.C. section 1961.

CAK states that Velasquez Plumbing, Mr. Velasquez, and Mrs. Velasquez are jointly and severally liable for the back wages, overtime, and fees paid to Plaintiffs. (*Id.*) CAK argues that Velasquez Plumbing and Mr. Velasquez are further jointly and severally liable for CAK's attorneys' fees in defense of Plaintiff's and Davis's claims and CAK's attorneys' fees for pursuing its third-party claims. (*Id.*) Because CAK has failed to establish Mr. and Mrs. Velasquez's personal liability *to CAK*, CAK can only collect damages from Velasquez Plumbing.

A.

CAK seeks to recover back wages, overtime, and fees paid to Plaintiffs. (ECF No. 88 at 9.) In October 2024, CAK settled with Plaintiffs to resolve their claims, and on November 1, 2024, the Court entered an Order approving Plaintiffs', Davis's, and CAK's Settlement Term Sheet. (ECF No. 82.) Under the Settlement Term Sheet, CAK paid Plaintiffs a total of

$60,750.00 and paid Plaintiffs $95,000.00 for Plaintiffs' attorneys' fees, totaling $155,750.00. (ECF No. 88-1 at 2.)

Velasquez Plumbing is liable to CAK for this amount because (i) Velasquez Plumbing promised to indemnify CAK for any claims brought against CAK due to Velasquez Plumbing's conduct; (ii) Velasquez Plumbing breached the Velasquez Subcontract and Covenant which led to these damages; and (iii) statutory indemnification requires Velasquez Plumbing to indemnify CAK for any damages or attorneys' fees owed because Velasquez Plumbing failed to pay wages.

B.

CAK seeks to recover the attorneys' fees it incurred and paid in defending Plaintiffs' claims and Davis's crossclaim, and CAK argues that it is permitted to recover these attorneys' fees under (i) the Velasquez Subcontract, (ii) Code of Virginia section 11-4.6(C)(3), and (iii) because Velasquez Plumbing breached the Velasquez Subcontract. (ECF No. 88 at 9-10.) As explained below, CAK can recover these attorneys' fees under the Velasquez Subcontract, but not under Code of Virginia section 11-4.6(C)(3) or its breach of contract theory.

The Velasquez Subcontract's indemnification provision required Velasquez Plumbing to pay CAK's attorneys' fees for claims raised against CAK that were connected to the work performed on the Ballston Project. (ECF No. 44-1 at 4.) Therefore, CAK can recover these attorneys' fees under the Velasquez Subcontract.

CAK argues that Code of Virginia section 11-4.6(C)(3) allows it to recover its attorneys' fees from the Velasquez Defendants (ECF No. 88 at 9), but it misinterprets the statute. The statute provides that "a subcontractor shall indemnify [a] general contractor for any . . . attorney fees *owed* as a result of the subcontractor's failure to pay wages." VA. CODE § 11-4.6(C)(3) (emphasis added). The "attorney fees" mentioned in the statute refer to attorneys' fees that a

general contractor has paid to a plaintiff or other claimant because of litigation. It does not provide that a subcontractor must pay the attorneys' fees *incurred* by a general contractor for defending against a claim. Thus, this statute allows CAK to recover the $95,000.00 it paid Plaintiffs for their attorneys' fees, but it does not allow CAK to recover its own attorneys' fees for defending against Plaintiffs' claim or Davis's crossclaim.

CAK also claims that Velasquez Plumbing's breach of the Velasquez Subcontract allows it to recover attorneys' fees incurred for defending against Plaintiffs' and Davis's claims. (ECF No. 88 at 10-11.) CAK cannot recover its attorneys' fees under this theory because under Maryland law, "[l]egal fees are generally not recoverable as damages in connection with a breach of contract claim." *PNC Bank, N.A. v. Davis*, 631 F. Supp. 3d 253, 271 (D. Md. 2022) (citing to *St. Luke Evangelical Lutheran Church, Inc. v. Smith*, 318 Md. 337, 568 A.2d 35, 38 (1990)).

To initially defend against Plaintiffs' claims, The Hartford, the insurance company for CAK, hired The Purdy Law Firm, P.C. ("The Purdy Law Firm"). (ECF No. 88 at 10.) CAK paid The Purdy Law Firm $3,690.00 for defense efforts, including reviewing substantive law, communicating with CAK, and drafting court documents. (*Id.*; ECF No. 88-1 at 5.) The Hartford then hired O'Hagan Meyer, PLLC ("O'Hagan Meyer"). (*Id.*) Under CAK's insurance policy with The Hartford, CAK was required to pay a $10,000.00 deductible to O'Hagan Meyer for attorneys' fees, and once the deductible was paid, The Hartford was responsible for paying O'Hagan Meyer. (ECF No. 88 at 10.) CAK paid the $10,000.00 deductible to O'Hagan Meyer, and O'Hagan Meyer reviewed and analyzed Plaintiffs' Amended Complaint, investigated the claims, and prepared CAK's answer. (*Id.*)

16

The insurance policy with The Hartford did not cover attorneys' fees for the defense of Davis's crossclaim, so CAK separately hired O'Hagan Meyer, and O'Hagan Meyer billed CAK $8,512.50 for drafting CAK's answer to Davis's crossclaim, reviewing Virginia law on crossclaims, and drafting an arbitration and stay agreement with Davis. (ECF No. 97 at 10.)

Therefore, as required by the Velasquez Subcontract, Velasquez Plumbing must pay CAK $22,202.50 for the attorneys' fees CAK incurred in defending against Plaintiffs' claims and Davis's crossclaim.

### C.

CAK also seeks to recover the attorneys' fees it has incurred since pursuing *its* third-party claims against the Velasquez Defendants, which total $11,599.50. (ECF No. 88 at 10-12.) CAK again argues that the Velasquez Subcontract, Code of Virginia section 11-4.6(C)(3), and contract law permits it to recover these attorneys' fees. (*Id.* at 10-11.)

"Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party." *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006) (citing *Lee v. Mulford*, 269 Va. 562, 565 (2005)). But parties can contractually agree that attorneys' fees will be recoverable, or attorneys' fees may be recoverable under selected statutes. *See Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015); *See Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 577. Neither of these circumstances applies here.

While the Velasquez Subcontract allows CAK to recover attorneys' fees, this provision only allows the recovery of attorneys' fees when CAK incurs the fees defending a claim. (ECF No. 44-1 at 4.) The Velasquez Subcontract does not allow CAK to recover attorneys' fees for affirmatively asserting claims against Velasquez Plumbing. And, as discussed above, Code of Virginia section 11-4.6(C)(3) does not allow CAK to recover its own attorneys' fees. Therefore,

Velasquez Plumbing need not pay the attorneys' fees CAK incurred in pursuing its Third-Party Complaint.

### D.

CAK also requests post-judgment interest accruing under 28 U.S.C. section 1961. "Federal law mandates the awarding of post-judgment interest" on any money judgment obtained in a civil case in district court. *Quesinberry v. Life Ins. of N.A.*, 987 F.2d 1017, 1031 (4th Cir. 1993). Interest is calculated from the date of the entry of the judgment at a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by . . . the Federal Reserve . . . for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). Thus, Velasquez Plumbing must pay CAK post-judgment interest at this rate.

### V.

Accordingly, CAK's Motion for Default Judgment is GRANTED as to Velasquez Plumbing and DENIED as to Walter Velasquez and Silvia I. Velasquez, and it is further

ORDERED that judgment is entered in favor of CAK and against Velasquez Plumbing, as follows:

1. Velasquez Plumbing must pay CAK $155,750.00 for back wages, overtime, and attorneys' fees paid to Plaintiffs.

2. Velasquez Plumbing must pay CAK $22,202.50 for the attorneys' fees CAK incurred defending against Plaintiffs' claims and Davis's crossclaim.

3. Velasquez Plumbing must pay CAK post-judgment interest at the rate provided in 28 U.S.C. section 1961.

And because all issues and matters between and among all parties have been resolved, it is hereby ORDERED that this matter is ended.

Entered this 11th day of February 2025.

                                                          William B. Porter

Alexandria, Virginia                                    United States Magistrate Judge